UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

ALLEN ATKINS,

          Plaintiff,                       Case No. 2:23-cv-114

v.                                             Honorable Paul L. Maloney

UNKNOWN MYERS et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.) The Court previously stayed proceedings in this case and referred it to the Prisoner Civil Rights Litigation Early Mediation Program. (ECF No. 11.) On August 17, 2023, Plaintiff filed a statement seeking to have this matter excluded from early mediation. (ECF No. 12.) In an order (ECF No. 13) entered on August 21, 2023, the Court removed the matter from early mediation.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant

McLean. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Myers, Peterman, Jarvie, Grondin, and Carruth: (1) Plaintiff's official and personal capacity claims for declaratory and injunctive relief; (2) Plaintiff's official capacity claims for damages against Defendants Myers, Peterman, and Jarvie; and (3) any purported Fourteenth Amendment due process and First Amendment access to the courts claims premised upon the deprivation of Plaintiff's legal and personal property. The following claims remain in the case: (1) Plaintiff's personal capacity First Amendment retaliation claims for damages against Defendants Myers, Grondin, Peterman, Jarvie, and Carruth; and (2) Plaintiff's Eighth Amendment individual capacity excessive force claim for damages against Defendant Myers.

## Discussion

### I.     Factual Allegations

Plaintiff is currently incarcerated by the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events of which he complains occurred, however, during Plaintiff's prior incarceration at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Grievance Coordinator Michael McLean, Sergeants Unknown Grondin and Unknown Carruth, and Correctional Officers Unknown Myers, Unknown Peterman, and Unknown Jarvie. Plaintiff indicates that he is suing Defendant Myers, Peterman, and Jarvie in their official and individual capacities. (ECF No. 1, PageID.3.) He sues all other Defendants in their individual capacities only. (*Id.*, PageID.3–4.)

Plaintiff alleges that on August 31, 2022,[1] Defendant Myers approached his cell, opened the food slot, and ordered Plaintiff to pass his property through the slot so that Defendant Myers

---

[1] Plaintiff writes August 31, 2023, in his complaint, however, considering that the Court received Plaintiff's complaint on June 26, 2023, it appears that this is a typographical error. Moreover, the

could pack them in a state-issued duffel bag pending Plaintiff's transfer. (*Id.*, PageID.5.) Plaintiff told Defendant Myers that he had excess legal materials and asked to access his legal footlocker so that he could place his legal property inside it. (*Id.*) Defendant Myers refused Plaintiff's request and told Plaintiff that any property that could not fit inside one state-issued duffel bag would be destroyed. (*Id.*, PageID.5–6.)

Plaintiff refused to give Defendant Myers his property and proceeded to "place both hands in the food [slot to] conduct[] a peaceful protest."[2] (*Id.*, PageID.6.) Plaintiff told Defendant Myers that he would be keeping his hands in the slot until Defendant Myers called a sergeant. (*Id.*) Defendant Myers then repeatedly slammed Plaintiff's hands in the flood slot to try to end Plaintiff's "peaceful protest." (*Id.*) Defendant Myers then walked away, stating "Atkins you're going to pay for this n*****." (*Id.*)

Defendant Myers returned with Defendant Grondin. (*Id.*) Plaintiff asked Defendant Grondin to call the Michigan State Police (MSP) with respect to Defendant Myers' assault; Defendant Grondin refused to do so. (*Id.*) Plaintiff asked that Defendant Grondin call Defendant McLean to seek permission for Plaintiff to file a grievance despite being on modified access; Defendant Grondin refused to do that as well. (*Id.*, PageID.7.)

Plaintiff told Defendant Grondin that his hands and wrists were swollen, and Defendant Grondin had a nurse come to Plaintiff's cell. (*Id.*) Plaintiff asked for bandages and ointment, and

---

exhibit attached to Plaintiff's complaint indicates that a misconduct ticket regarding the events set forth above was issued for a violation that occurred on August 31, 2022. (ECF No. 1-1, PageID.19.)

[2] This practice is commonly known as taking one's food slot hostage. An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g.*, *Earby v. Ray*, 47 F. App'x 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted by* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

3

the nurse said that he would get those items if Plaintiff allowed Defendant Grondin to escort him to the segregation unit's medical office. (*Id.*) During this time, Plaintiff refused to exit his cell, and Defendant Myers threatened to throw away Plaintiff's legal and personal property "during a retaliatory cell search." (*Id.*) Defendant Myers and Grondin also refused Plaintiff's request for a grievance form. (*Id.*) Plaintiff told them that after he was transferred, he would grieve the matter and "seek state [and] federal criminal and civil prosecution in courts." (*Id.*, PageID.8.) Defendant Grondin told Plaintiff "that n****** don't have rights in court and that she didn't give a f*** about Plaintiff filing a grievance or federal lawsuit." (*Id.*) Defendant Grondin then directed Defendant Myers to destroy any personal and legal property that Plaintiff had stored in the housing unit's property room. (*Id.*)

Later that evening, Defendant Carruth conducted security rounds and asked Plaintiff to allow officers to pack his property for the transfer. (*Id.*) Plaintiff told Defendant Carruth that he had excess legal property that needed to be placed in his legal footlocker. (*Id.*) Plaintiff told Defendant Carruth that "the Steamboat Unit property room contained one grey personal footlocker, one blue legal footlocker, [and one] green state duffel bag that was 85 percent full of property." (*Id.*) Defendant Carruth told Plaintiff that he would be ordering Defendants Jarvie and Peterman to pack Plaintiff's property, and that he would be supervising the packing. (*Id.*, PageID.9.)

On September 1, 2022, Defendants Jarvie and Peterman came to Plaintiff's cell and ordered him to turn over his property for packing. (*Id.*) Plaintiff was strip searched, chained, and escorted to the unit base. (*Id.*) At that time, Defendants Myers, Jarvie, and Carruth were at the officers' station. (*Id.*) Defendant Myers told Plaintiff "to enjoy his sanctions for the retaliatory misconduct report he wrote against Plaintiff for reporting him to his supervisor Defendant Grondin." (*Id.*) Defendant Carruth told Plaintiff that he would not be filing any lawsuits "without any paper, ink

4

pens[,] and legal property." (*Id.*, PageID.10.) When Plaintiff asked him what he meant, Defendant Carruth told Plaintiff that he had ordered Defendants Jarvie and Peterman to destroy Plaintiff's legal and writing materials "since Plaintiff wants to sue, grieve[,] and make police statements against his co-workers." (*Id.*) When Plaintiff responded that he would be mailing a grievance upon arrival at his transfer location, Defendant Carruth told Plaintiff that he would be ordering Defendant McLean to deny Plaintiff access to the grievance system. (*Id.*)

Plaintiff was subsequently transferred to the G. Robert Cotton Correctional Facility (JCF) later that day. (*Id.*) He was still on modified access, and wrote to Defendant McLean to request a Step I grievance form to use against Defendants Myers, Jarvie, Peterman, Grondin, and Carruth. (*Id.*, PageID.11.) Plaintiff also asked that the MDOC Internal Affairs and Ombudsman, as well as the MSP, be contacted "for criminal and civil prosecution against Defendant Myers for assault." (*Id.*) Defendant McLean never responded to Plaintiff's request. (*Id.*) Subsequently, non-party JCF Resident Unit Manager Fumihiko Yuki told Plaintiff that his Step I grievance had been denied because he "sought to obtain [MSP assistance] against co-worker Defendant Myers." (*Id.*)

Based upon the foregoing, Plaintiff asserts the following claims for relief: (1) First Amendment retaliation claims against Defendants Grondin, Carruth, Jarvie, and Peterman for destroying Plaintiff's property in response to Plaintiff's request for a grievance and indication that he would be filing lawsuits about the incident; (2) a First Amendment retaliation claim against Defendant Myers for issuing a misconduct in retaliation for Plaintiff's "peaceful protest"; (3) a First Amendment retaliation claim against Defendant McLean for refusing to respond to Plaintiff's request for a Step I grievance form; and (4) a First Amendment retaliation claim and Eighth Amendment excessive force claim against Defendants Myers for slamming Plaintiff's hands in the food slot after Plaintiff asked that Defendant Myers call "his supervisor Defendant Grondin." (*Id.*,

5

PageID.12–14.) Plaintiff's complaint can also be liberally construed to assert Fourteenth Amendment procedural due process claims for the deprivation of his property, as well as First Amendment access to the courts claims premised upon the deprivation of his legal and writing materials. Plaintiff seeks declaratory relief, unspecified injunctive relief, and nominal and punitive damages. (*Id.*, PageID.14.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Official Capacity Claims

As noted above, Plaintiff indicates that he is suing Defendants Myers, Peterman, and Jarvie in their official and personal capacities. (ECF No. 1, PageID.3.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has

7

specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory and injunctive relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's damages claims against Defendants Myers, Peterman, and Jarvie in their official capacities.

An official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, however, Plaintiff is no longer confined at URF, which is where he avers Defendants Myers, Peterman, and Jarvie are employed and where the harm allegedly occurred.

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that such relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S.

95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at DRF and has not alleged facts that would show that he will be subjected to further future conduct by Defendants Myers, Peterman, and Jarvie. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581. Accordingly, the Court will dismiss Plaintiff's official capacity claims in their entirety.[3]

### B. Personal Capacity Claims

#### 1. First Amendment Claims

##### a. Retaliation

Plaintiff raises several First Amendment retaliation claims in his complaint. He first claims that Defendants Grondin, Carruth, Jarvie, and Peterman retaliated against him by destroying his property because Plaintiff threatened to file lawsuits and grievances regarding the alleged assault by Defendant Myers. Plaintiff also contends that Defendant Myers issued a misconduct ticket in retaliation for: (1) Plaintiff's "peaceful protest" and (2) Plaintiff stating his intent to reportg Defendant Myers' behavior to Defendant Grondin. Finally, Plaintiff suggests that Defendant McLean retaliated against him by refusing to provide a Step I grievance form because Plaintiff requested that the MSP be contacted for civil and criminal prosecution of Defendant Myers.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to

---

[3] To the extent Plaintiff seeks declaratory and injunctive relief against all Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above.

set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### i.     Defendants Grondin, Carruth, Jarvie, and Peterman

Plaintiff first contends that Defendants Grondin, Carruth, Jarvie, and Peterman retaliated against him by depriving him of his personal and legal property because Plaintiff threatened to file grievances and lawsuits regarding the alleged assault by Defendant Myers. (ECF No. 1, PageID.12.)

Plaintiff has sufficiently alleged that he engaged in protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006)); *Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by threatening to file a grievance). Moreover, being deprived of personal property can constitute adverse action. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Finally, Plaintiff has alleged facts suggesting that Defendants Grondin, Carruth, Jarvie, and Peterman destroyed his property because of his threats to file grievances and lawsuits regarding Defendant Myers. Given these allegations, the Court concludes that Plaintiff has set forth plausible First Amendment retaliation claims against Defendants Grondin, Carruth, Jarvie, and Peterman.

### ii. Defendant Myers

Plaintiff next alleges that Defendant Myers retaliated against him by issuing a misconduct ticket. (ECF No. 1, PageID.13.) Plaintiff suggests that Defendant Myers issued the ticket for: (1) Plaintiff's "peaceful protest" and (2) Plaintiff's statement of intent to report Defendant Myers' behavior to Defendant Grondin.

As an initial matter, to the extent Plaintiff bases his retaliation claim against Defendant Myers on his "peaceful protest," his claim fails because taking one's food slot hostage is a violation of a legitimate prison regulation. *See Annabel*, 2011 WL 3878379, at *4 n.5. The Sixth Circuit has determined that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" for purposes of a retaliation claim. *Thaddeus-X*, 175 F.3d at 395; *see also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008).

Plaintiff, however, also bases his retaliation claim against Defendant Myers upon Plaintiff's request that Defendant Myers get a sergeant (Defendant Grondin) so that Plaintiff could report Defendant Myers' actions to her. That request constitutes protected conduct. *See Holzemer*, 621 F.3d at 521. Moreover, Defendant Myers' issuance of a misconduct ticket can "constitute[] an adverse action." *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007). Finally, Plaintiff alleges facts suggesting that Defendant Myers explicitly told Plaintiff that he issued the misconduct ticket because Plaintiff complained about Defendant Myers to Defendant Grondin. Given these allegations, Plaintiff's First Amendment retaliation claim against Defendant Myers cannot be dismissed at screening.

### iii. Defendant McLean

Plaintiff suggests that Defendant McLean retaliated against him by refusing to provide a Step I grievance form because Plaintiff requested that the MSP be contacted for civil and criminal

prosecution of Defendant Myers. Even if Plaintiff engaged in protected activity, his retaliation claim against Defendant McLean fails at the second step, as discussed below.

Many courts, including this one, have held that the denial or refusal to process a grievance does not constitute adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (discussing that the rejection or denial of prison grievances does not constitute an adverse action for purposes of a retaliation claim). Furthermore, the continuation of Plaintiff's modified access status does not constitute adverse action. *See, e.g.*, *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Accordingly, because Plaintiff has not alleged facts suggesting that Defendant McLean engaged in adverse action, he cannot maintain a First Amendment retaliation claim against Defendant McLean. Plaintiff's claim will, therefore, be dismissed.

### b. Access to the Courts

The Court has construed Plaintiff's complaint to assert First Amendment access to the courts claims premised upon his allegations that he was deprived of his legal and writing materials.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating

>capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff's complaint is devoid of any facts regarding any underlying cause of action or any remedy that he lost because of the deprivation of his legal and writing materials. Notably, despite Plaintiff's suggestion that Defendants wanted to prevent him from accessing the courts by depriving him of such materials, Plaintiff was able to file the instant lawsuit regarding the issue. Accordingly, any intended First Amendment access to the courts claims will be dismissed.

>2.   **Eighth Amendment Excessive Force**

Plaintiff contends that Defendant Myers used excessive force against him, in violation of the Eighth Amendment, by slamming Plaintiff's hands in the food slot after Plaintiff asked that Defendant Myers call his supervisor, Defendant Grondin. (ECF No. 1, PageID.12–14.)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene

14

society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Id.* at 9.

Here, Plaintiff contends that Defendant Myers slammed Plaintiff's hands in the food slot "multiple times." (ECF No. 1, PageID.6.) Plaintiff also alleges that his hands were swollen and bleeding "due to being slammed in the food slot." (*Id.*, PageID.7.) The facts, taken as true, satisfy both the subjective and objective components set forth above. Plaintiff, therefore, has sufficiently stated an Eighth Amendment excessive force claim against Defendant Myers at this stage of the proceedings.

### 3. Fourteenth Amendment Due Process—Deprivation of Property

The Court has also construed Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims premised upon his allegations that he was deprived of his property. However, such claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).

Plaintiff has not alleged that such post-deprivation remedies are inadequate. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (eff. Apr. 26, 2021). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Mar. 27, 2017). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Accordingly, any intended Fourteenth Amendment due process claims premised upon the deprivation of Plaintiff's property will be dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant McLean will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official and personal capacity claims for declaratory and injunctive relief; (2) Plaintiff's official capacity claims for damages against Defendants Myers, Peterman, and Jarvie; and (3) any purported Fourteenth Amendment due process and First Amendment access to the courts claims premised upon the deprivation of Plaintiff's legal and personal property. The following claims remain in the case: (1) Plaintiff's personal capacity First Amendment retaliation claims for damages against Defendants Myers, Grondin, Peterman, Jarvie, and Carruth; and (2) Plaintiff's Eighth Amendment individual capacity excessive force claim for damages against Defendant Myers.

An order consistent with this opinion will be entered.

Dated:   September 12, 2023                         /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge