UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALLEN ATKINS, #742687,

        Plaintiff,

v.

UNKNOWN MYERS, et al.,

        Defendants.
_____/

Case No. 2:23-cv-114

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses the exhaustion-based motions for summary judgment filed by Plaintiff (ECF No. 22) and Defendants (ECF No. 20).

Plaintiff — state prisoner Allen Atkins — filed suit pursuant to 42 U.S.C. § 1983 on June 26, 2023. In his verified complaint, Atkins asserted that while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees[1] utilized excessive force against him in violation of his Eighth Amendment rights and retaliated against him in violation of his First Amendment rights. (ECF No. 1, PageID.12-13.) More specifically, Atkins alleged that after he

---

[1] Atkins named the following URF employees as Defendants: (1) Corrections Officer (CO) Unknown Myers, (2) CO Unknown Peterman, (3) CO Unknown Jarvie, (4) Sergeant (Sgt.) Unknown Grondin, (5) CO Unknown Carruth, and (6) Grievance Coordinator Michael McLean. (ECF No. 1, PageID.3-4.)

engaged in a peaceful protest at URF by placing his hands through the slot of his cell door and refusing to remove them, Defendant CO Myers repeatedly slammed his hands in the cell slot. (*Id.*, PageID.6.) After he threatened to file a grievance against CO Myers related to the alleged assault, Defendants allegedly issued Atkins retaliatory misconduct tickets and confiscated and destroyed his legal property and writing utensils. (*Id.*, PageID.7-10.) Atkins also alleged that Grievance Coordinator McLean violated his "First Amendment right to file Step I grievance [sic] by refusing to respond to Plaintiff's written request for a Step I grievance form." (*Id.*, PageID.13.)

On September 12, 2023, this Court issued a screening opinion finding that Atkins's complaint stated "personal capacity First Amendment retaliation claims for damages against Defendants Myers, Grondin, Peterman, Jarvie, and Carruth" and an "Eighth Amendment individual capacity excessive force claim for damages against Defendant Myers." (ECF No. 14, PageID.75.)

On November 17, 2023, this Court received Defendants' motion for partial[2] summary judgment based on Atkins's failure to exhaust his administrative remedies. (ECF No. 20.) Defendants argue that Atkins did not pursue his excessive force or property-related retaliation claims through Step III of the grievance process, and that he therefore failed to exhaust those claims. (ECF No. 21, PageID.100-101.) On December 1, 2023, the Court received what Atkins labeled as "Plaintiff's Motion for

---

[2] Though Defendants' motion for summary judgment is not labeled as a motion for partial summary judgment, Defendants' brief indicates that "[a]t this time, Myers is not seeking dismissal of the retaliatory misconduct ticket claim." (ECF No. 21, PageID.100.)

Summary Judgment on the Basis of Exhaustion Unavailable." (ECF No. 22.) In his brief in support, Atkins says that at the time his claims arose, he was on modified grievance access and had to request a Step I grievance form from Grievance Coordinator McLean. (ECF No. 23, PageID.150-151.) Atkins avers that he requested a Step I grievance form, but that Grievance Coordinator McLean never provided him with the form, rendering the grievance process unavailable to him. (*Id.*) In response, Defendants provide an affidavit from current URF Grievance Coordinator Dan Eicher, and all of the requests for grievance forms that Atkins submitted while he was on modified access. (ECF No. 24-1.) All of those requests were made prior to Defendants' alleged actions. (*Id.*, PageID.177-306.)

The undersigned first recommends that the Court deny Atkins's motion for summary judgment because he does not truly contend that he is entitled to judgment as a matter of law, rather he opposes Defendants' exhaustion-based motion. The undersigned further recommends that the Court grant Defendants' motion for summary judgment. There are no genuine issues of material fact. The grievance records provided by Defendants establish that the grievance process was available to Atkins despite the fact that he was on modified access. And even construing the facts in the light most favorable to Atkins and accepting that he tried to mail a request for a Step I grievance form to Grievance Coordinator McLean but never received a response, it is the undersigned's opinion that this single attempt to obtain a grievance form did not constitute sufficient affirmative efforts to comply with the grievance process.

3

## II.  Factual Allegations

As set forth in this Court's September 12, 2023, screening opinion, Atkins's verified complaint contained the following factual allegations:

> Plaintiff alleges that on August 31, 2022,1 Defendant Myers approached his cell, opened the food slot, and ordered Plaintiff to pass his property through the slot so that Defendant Myers could pack them in a state-issued duffel bag pending Plaintiff's transfer. (*Id.*, PageID.5.) Plaintiff told Defendant Myers that he had excess legal materials and asked to access his legal footlocker so that he could place his legal property inside it. (*Id.*) Defendant Myers refused Plaintiff's request and told Plaintiff that any property that could not fit inside one state-issued duffel bag would be destroyed. (*Id.*, PageID.5–6.)
>
> Plaintiff refused to give Defendant Myers his property and proceeded to "place both hands in the food [slot to] conduct[] a peaceful protest." (*Id.*, PageID.6.) Plaintiff told Defendant Myers that he would be keeping his hands in the slot until Defendant Myers called a sergeant. (*Id.*) Defendant Myers then repeatedly slammed Plaintiff's hands in the flood slot to try to end Plaintiff's "peaceful protest." (*Id.*) Defendant Myers then walked away, stating "Atkins you're going to pay for this n\*\*\*\*\*." (*Id.*)
>
> Defendant Myers returned with Defendant Grondin. (*Id.*) Plaintiff asked Defendant Grondin to call the Michigan State Police (MSP) with respect to Defendant Myers' assault; Defendant Grondin refused to do so. (*Id.*) Plaintiff asked that Defendant Grondin call Defendant McLean to seek permission for Plaintiff to file a grievance despite being on modified access; Defendant Grondin refused to do that as well. (*Id.*, PageID.7.)
>
> Plaintiff told Defendant Grondin that his hands and wrists were swollen, and Defendant Grondin had a nurse come to Plaintiff's cell. (*Id.*) Plaintiff asked for bandages and ointment, and the nurse said that he would get those items if Plaintiff allowed Defendant Grondin to escort him to the segregation unit's medical office. (*Id.*) During this time, Plaintiff refused to exit his cell, and Defendant Myers threatened to throw away Plaintiff's legal and personal property "during a retaliatory cell search." (*Id.*) Defendant Myers and Grondin also refused Plaintiff's request for a grievance form. (*Id.*) Plaintiff told them that after he was transferred, he would grieve the matter and "seek state [and] federal criminal and civil prosecution in courts." (*Id.*, PageID.8.) Defendant

4

Grondin told Plaintiff "that n****** don't have rights in court and that she didn't give a f*** about Plaintiff filing a grievance or federal lawsuit." (*Id.*) Defendant Grondin then directed Defendant Myers to destroy any personal and legal property that Plaintiff had stored in the housing unit's property room. (*Id.*)

Later that evening, Defendant Carruth conducted security rounds and asked Plaintiff to allow officers to pack his property for the transfer. (*Id.*) Plaintiff told Defendant Carruth that he had excess legal property that needed to be placed in his legal footlocker. (*Id.*) Plaintiff told Defendant Carruth that "the Steamboat Unit property room contained one grey personal footlocker, one blue legal footlocker, [and one] green state duffel bag that was 85 percent full of property." (*Id.*) Defendant Carruth told Plaintiff that he would be ordering Defendants Jarvie and Peterman to pack Plaintiff's property, and that he would be supervising the packing. (*Id.*, PageID.9.)

On September 1, 2022, Defendants Jarvie and Peterman came to Plaintiff's cell and ordered him to turn over his property for packing. (*Id.*) Plaintiff was strip searched, chained, and escorted to the unit base. (*Id.*) At that time, Defendants Myers, Jarvie, and Carruth were at the officers' station. (*Id.*) Defendant Myers told Plaintiff "to enjoy his sanctions for the retaliatory misconduct report he wrote against Plaintiff for reporting him to his supervisor Defendant Grondin." (*Id.*) Defendant Carruth told Plaintiff that he would not be filing any lawsuits "without any paper, ink pens[,] and legal property." (*Id.*, PageID.10.) When Plaintiff asked him what he meant, Defendant Carruth told Plaintiff that he had ordered Defendants Jarvie and Peterman to destroy Plaintiff's legal and writing materials "since Plaintiff wants to sue, grieve[,] and make police statements against his co-workers." (*Id.*) When Plaintiff responded that he would be mailing a grievance upon arrival at his transfer location, Defendant Carruth told Plaintiff that he would be ordering Defendant McLean to deny Plaintiff access to the grievance system. (*Id.*)

Plaintiff was subsequently transferred to the G. Robert Cotton Correctional Facility (JCF) later that day. (*Id.*) He was still on modified access, and wrote to Defendant McLean to request a Step I grievance form to use against Defendants Myers, Jarvie, Peterman, Grondin, and Carruth. (*Id.*, PageID.11.) Plaintiff also asked that the MDOC Internal Affairs and Ombudsman, as well as the MSP, be contacted "for criminal and civil prosecution against Defendant Myers for assault." (*Id.*) Defendant McLean never responded to Plaintiff's request. (*Id.*) Subsequently, non-party JCF Resident Unit Manager Fumihiko Yuki

> told Plaintiff that his Step I grievance had been denied because he "sought to obtain [MSP assistance] against co-worker Defendant Myers." (*Id.*)

(ECF No. 14, PageID.60-63.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[3] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

IV. **Exhaustion**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison

8

administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

10

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[4]

## V. Analysis

Both parties filed motions for summary judgment based on Atkins's failure to exhaust his administrative remedies. The undersigned addresses Atkins's motion first, and Defendants' motion second.

---

[4] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

### a. Atkins's Motion for Summary Judgment (ECF No. 22)

After Defendants moved for summary judgment based on Atkins's failure to exhaust his administrative remedies, Atkins filed a document entitled "Plaintiff's Motion for Summary Judgment on the Basis of Exhaustion Unavailable." (ECF No. 22, PageID.143.) He also filed a "Brief in Support of Motion for Summary Judgment on the Basis of Exhaustion." (ECF No. 23, PageID.146.) There, Atkins argued that his administrative remedies were unavailable and requested that the Court "enter an order allowing summary judgment against Defendants and not dismissing this lawsuit." (*Id.*, PageID.153.)

As set forth above, a prisoner's failure to exhaust his administrative remedies prior to filing suit is an affirmative defense. *Jones*, 549 U.S. at 212-16. If Defendants show that there are no genuine issues of material fact, and that Atkins did not exhaust available administrative remedies, then Defendants are entitled to summary judgment. In contrast, if there are genuine issues of material fact, or the uncontroverted facts establish that Atkins exhausted the available administrative remedies, the case goes forward. Atkins's motion for summary judgment is therefore improper. The purported motion is better construed as a response in opposition to Defendants' motion for summary judgment.

### b. Defendants' Motion for Partial Summary Judgment (ECF No. 20)

Defendants assert that they are entitled to summary judgment as to Atkins's excessive force and property-related retaliation claims because Atkins failed to pursue the claims through Step III of the MDOC's grievance process. (ECF No. 21,

PageID.100.)  Atkins says that he was on modified grievance access and that he mailed a request for a Step I grievance form to URF Grievance Coordinator McLean, but that Grievance Coordinator McLean never responded.  (ECF No. 1, PageID.11.) Atkins therefore contends that the grievance process was unavailable to him, and he was not required to exhaust the process.  (ECF No. 23, PageID.151.)

In response to Atkins's assertions, Defendants provide an affidavit from the current URF Grievance Coordinator, Dan Eicher.  (ECF No. 24-1.)  There, Eicher confirms that Atkins was on modified access status at the time that his claims arose. (*Id.*, PageID.163.)  Eicher explains that under MDOC policy, a prisoner on modified access status must request a Step I grievance form from the Grievance Coordinator before he can utilize the grievance process.  (*Id.*, PageID.162 (citing MDOC P.D. 03.02.130 at ¶ MM).)  That request must set forth the basis for the proposed grievance, and "contain all the information required in a Step I grievance." (*Id.*)  The Grievance Coordinator then decides whether to grant or deny the request based on whether it conforms to MDOC policy, and whether there are grounds for rejection. (*Id.*) Accordingly, placing a prisoner on modified access does not render the grievance process unavailable, it simply requires the prisoner to take an additional step in pursuing a grievance: demonstrate to the Grievance Coordinator that the proposed grievance conforms to MDOC policy.

To be fair, Atkins does not simply allege that the grievance process was unavailable because he was placed on modified access status.  He alleges that he mailed Grievance Coordinator McLean a request for a Step I grievance while on

13

modified access, and that McLean failed to respond.[5] (ECF No. 1, PageID.11.) But MDOC policy required Grievance Coordinator McLean to maintain a record of all of Atkins's grievance requests. (ECF No. 24-1, PageID.162 (citing MDOC P.D. 03.02.130 at ¶ MM).) And Grievance Coordinator Eicher provided all forty-five of the requests Atkins made while he was on modified access status. None of those requests were made after the alleged incidents of excessive force and retaliation. (*See* ECF No. 24-1, PageID.177-306.)

Furthermore, even accepting that Atkins mailed a request for a Step I grievance to Grievance Coordinator McLean and that he never received a response, Atkins does not allege that he followed up on the request. Atkins does not say that he sent a communication to McLean, or any other person, asking about the status of his grievance. Nor does he allege that he sent additional requests for a Step I grievance form to McLean to no avail. As provided by the Sixth Circuit in *Lamb v. Kendrick*, 52 F.4th 286, 292-93 (6th Cir. 2022):

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient

---

[5] Atkins also alleges that he asked Defendants Myers and Grondin to call Grievance Coordinator McLean so that he could approve a Step I grievance form. (ECF No. 1, PageID.6-7.) But, as set forth above, MDOC P.D. 03.02.130 at ¶ MM requires prisoners on modified access to the grievance system to submit a written request for a Step I grievance form.

14

under the circumstances." *Id.* (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)]) (internal quotation marks omitted).

In the undersigned's opinion, Atkins's single written attempt to obtain a Step I grievance form from Grievance Coordinator McLean did not constitute sufficient affirmative efforts to comply with the grievance process. Accordingly, it is the undersigned's opinion that Defendants have discharged their burden; there are no genuine issues of material fact, and Atkins failed to exhaust his administrative remedies with respect to his excessive force claim, as well as his retaliation claims unrelated to the misconduct ticket issued by Defendant Myers.

## VI. Recommendation

The undersigned first recommends that the Court deny Atkins's motion for summary judgment (ECF No. 22) because he does not truly contend that he is entitled to judgment as a matter of law, rather he opposes Defendants' exhaustion-based motion. The undersigned further recommends that the Court grant Defendants' motion for partial summary judgment (ECF No. 20). There are no genuine issues of material fact. The grievance records provided by Defendants establish that the grievance process was available to Atkins despite the fact that he was on modified access. And even construing the facts in the light most favorable to Atkins and accepting that he tried to mail a request for a Step I grievance form to Grievance Coordinator McLean but never received a response, it is the undersigned's opinion that this single attempt to obtain a grievance form did not constitute sufficient affirmative efforts to comply with the grievance process.

If the Court accepts this recommendation, Atkins's retaliatory misconduct claim against Defendant CO Myers will remain.

Dated:   January 24, 2024                              /s/ *Maarten Vermaat*
                                                       MAARTEN VERMAAT
                                                       U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).